IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID BURNS**, | Case No.: 3:23-cv-526-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **JAMES THUNEY and JOE THUNEY**, | |
| Defendants. | |

John H. Chambers, Elizabeth C. Knight, and Lauren J. Russell, DUNN CARNEY ALLEN HIGGINS & TONGUE LLP, 851 SW Sixth Ave., Suite 1500, Portland, Oregon, 97204. Of Attorneys for Plaintiff.

Scott L. Mullins, MULLINS LAW OFFICE, 1000 SW Broadway, Suite 2300, Portland, Oregon, 97205. Of Attorney for Defendants.

**Michael H. Simon, District Judge.**

This dispute arises from the parties' relationship as shareholders in a closely held corporation, PPV, Inc. (PPV). Plaintiff was a minority shareholder, and Defendants were the majority, controlling shareholders. Plaintiff alleges that Defendants breached their fiduciary duties owed to him as a minority shareholder. Before the Court are two motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In Defendants' Amended Motion to Dismiss, Defendants argue that Plaintiff lacks standing and the doctrine of claim preclusion bars

Plaintiff's claim. In Defendants Second Motion to Dismiss, Defendants argue that Plaintiff is barred from bringing his breach of fiduciary duty claim under Oregon Revised Statutes (ORS) § 60.952(5)(d). For the reasons explained below, the Court denies Defendants' motions.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND[1]

Plaintiff was a minority shareholder, and Defendants were the majority, controlling shareholders of PPV. Compl. ¶ 4 (ECF 1). Plaintiff and PPV were involved in a previous state court litigation that arose from an election made by PPV under ORS § 60.952(5) to purchase Plaintiff's shares at fair value, in response to Plaintiff filing a state court action alleging claims against PPV and Defendants. *See* ECF 9 at 3. On July 10, 2019, the Multnomah County Circuit Court entered an Order re Fair Value Purchase of Shares (Purchase Order). Am. Mot. To Dismiss, Ex. 1 (ECF 7-1). The Purchase Order required PPV to purchase Plaintiff's stock in PPV for $1,942,343.62, plus pay Plaintiff $312,194 in dividends. Compl. ¶ 5. The state court declined to apply a marketability discount in calculating the value of Plaintiff's shares in PPV because of

---

[1] Both parties provide and reference exhibits outside the Complaint as documents incorporated by reference in the Complaint. Neither party objects to the exhibits provided. The Court agrees that the Order re Fair Value Purchase of Shares entered by the state court on July 10, 2019, and the March 29, 2021 Settlement Agreement between Plaintiff, Defendants, PPV, and Bravo Environmental NW, Inc. are incorporated by reference in the Complaint. Thus, the Court may consider those documents on a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018).

The Court does not agree that the Stipulated Limited Judgment of Dismissal entered by the state court on August 25, 2022, was incorporated by reference in the Complaint. The Court, however, may take judicial notice of adjudicative facts that are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) (quoting Fed. R. Evid. 201(b)(2)). In the preclusion context, a federal court may "[take] judicial notice of a state court decision and the briefs filed in that court to determine if an issue was raised and decided by the state court for res judicata purposes." *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005). Both parties also request that the Court take judicial notice of the relevant Bankruptcy Court decisions, which the Court concludes is appropriate in this context.

Defendants' oppressive conduct against Plaintiff. Purchase Order at 2. The state court also awarded interest on all amounts due. Compl. ¶ 5. The state court approved PPV to pay Plaintiff in installments, but Plaintiff was required to relinquish his stock after the first payment, which Plaintiff did, in or about September 2019. *Id.* The state court added significant restrictions on PPV and awarded certain rights to Plaintiff until he was paid in full. Purchase Order at 3-4.

In December 2019, PPV and its wholly owned subsidiary, Bravo Entertainment NW, Inc. (Bravo), each filed a petition for relief under Chapter 11 in the United States Bankruptcy Court for the District of Oregon (Bankruptcy Court). Compl. ¶ 6. Plaintiff filed a proof of claim in PPV's bankruptcy proceeding for the remaining amount owed to him, $2,401.978.52. *Id.* In April 2021, the Bankruptcy Court confirmed the Chapter 11 Bankruptcy Plan (Bankruptcy Plan). ECF 2 at 36. The Bankruptcy Plan required PPV to be sold and directed that Plaintiff be paid $1,400,000 upon the sale of PPV and $500,000 upon the sale of Bravo or another qualifying event. Compl. ¶ 7.

On December 16, 2022, Plaintiff filed a lawsuit in state court, alleging a claim for breach of fiduciary duty. ECF 1 at 5-8. On January 15, 2023, Defendants removed that state action to Bankruptcy Court. ECF 1 at 1-4. Plaintiff filed a motion to remand. In March 2023, the Bankruptcy Court found that it did not have subject matter jurisdiction to adjudicate Plaintiff's breach of fiduciary claim and thus Plaintiff's claim should be remanded to state court. ECF 2 at 34-51. The Bankruptcy Court, however, first referred to this Court the question of whether Defendants' Notice of Removal was sufficient to remove the case to this district court under diversity jurisdiction. ECF 2 at 52-53. The Court concluded that it was. ECF 1-1.

In his Complaint, Plaintiff alleges that after PPV was sold, Defendants did not make a good-faith effort to sell Bravo, which resulted in Plaintiff not recovering the remaining amount

PAGE 4 – OPINION AND ORDER

due under the Bankruptcy Plan. Compl. ¶ 10. Plaintiff alleges that during the bankruptcy proceedings, Plaintiff discovered that Defendants directed PPV and Bravo to guarantee loans to another company—Essential Service Group, Inc. (ESG). *Id.* ¶ 9. Defendants were the majority or sole shareholders of ESG, and ESG later defaulted on the guaranteed loans. *Id.* Plaintiff alleges that those loans did not benefit the shareholders of PPV. *Id.* Plaintiff contends that without PPV's and Bravo's obligations under the loan guarantees, neither entity would have filed for bankruptcy and Plaintiff would have received all the monies owed to him by PPV. *Id.* ¶ 10. Plaintiff further alleges that Defendants' causing PPV to guarantee the loans was self-interested, the loans were not beneficial or fair to Plaintiff, and Defendants did not follow corporate formalities in causing PPV to guarantee ESG's loans. *Id.* Plaintiff alleges that the guarantees required him to settle his claims in bankruptcy for less than he otherwise would have received. He thus asserts that he is entitled to damages in the amount of $1,001,978.52, which is the difference between the amount owed at the time PPV filed for bankruptcy and the partial payment Plaintiff received in the bankruptcy. Plaintiff also seeks interest from the date of when PPV's bankruptcy petition was filed December 10, 2019, plus other prejudgment and post-judgment interest. *Id.*

## DISCUSSION

Defendants assert three arguments in support of their motions to dismiss. First, Defendants contend that Plaintiff does not have standing to bring either a direct or derivative suit. Second, Defendants contend that the doctrine of claim preclusion, or *res judicata*, bars Plaintiff's claim. Third, Defendants contend that Plaintiff's claim is barred because any fiduciary duties owed by Defendants to Plaintiff ended when Plaintiff relinquished his stock certificate. The Court addresses each argument in turn.

**A. Standing**

Plaintiff alleges that because he was a minority shareholder in PPV, Defendants owed him fiduciary duties and breached their fiduciary duties to Plaintiff during that time. Defendants argue that Plaintiff lacks standing to bring a direct suit because Plaintiff did not suffer a "special injury" and that he lacks standing to bring a derivative suit because he is not a current shareholder.[2]

Plaintiff's breach of fiduciary duty claim is based on state law. Under Oregon law, "[t]he majority shareholder[s] of a close corporation owe[] the minority [shareholders] fiduciary duties of loyalty, good faith, fair dealing and full disclosure." *Chiles v. Robertson*, 94 Or. App. 604, 619 (1989) (citing *Delaney v. Georgia-Pac. Corp.*, 278 Or. 305, 310-311(1977)); *see also Noakes v. Schoenborn*, 116 Or. App. 464, 471 (1992). "A wrongful act that diminishes the value of stock and thereby injures shareholders only indirectly, by reason of the prior injury to the corporation, is derivative. The general rule is that such claims must be brought in the name of the corporation." *Noakes*, 116 Or. App. at 471.

Plaintiff's allegations do not simply allege a wrongful act that diminished the value of PPV stock and thereby only injured Plaintiff indirectly. Further, even if his allegations were construed in that way, there is "a well-recognized exception" to this rule for minority shareholders in a closely held corporations. *Id.* Minority shareholders in a closely held corporation "may bring a direct action, rather than a derivative action, if they allege harm to themselves distinct from the harm to the corporation *or* a breach of a special duty owed by the

---

[2] Regarding Defendants' argument that Plaintiff cannot bring a derivative action, the Court declines to consider that issue because .the Court previously determined that Plaintiff's claim is a direct action against Defendants. *See* ECF 15 at 4.

defendant to the shareholders." *Id.* (emphasis added); *see also Wulf v. Mackey*, 135 Or. App. 655, 660 (1995) (explaining that "*Noakes* prescribes a disjunctive test for direct actions").

"When the majority shareholders of a closely held corporation use their control over the corporation to their own advantage and exclude the minority from the benefits of participating in the corporation, absent a legitimate business purpose, the actions constitute a breach of their fiduciary duties of loyalty, good faith and fair dealing." *Noakes*, 116 Or. App. at 472. Under such circumstances, a minority shareholder may bring a direct action against the majority shareholders. *Id.*

Plaintiff alleges that Defendants were the majority shareholders of PPV when Plaintiff was a minority shareholder at the time of the alleged wrongful acts. Defendants' alleged wrongdoing of guaranteeing the loans to ESG occurred between October and August 2018, and Plaintiff was a minority shareholder until September 2019.[3] Because Plaintiff was a minority shareholder at the time of Defendants' purported self-dealing, Defendants owed Plaintiff fiduciary duties. *See Chiles*, 94 Or. App. at 619; *Noakes*, 116 Or. App. at 471. Plaintiff alleges that Defendants breached their fiduciary duties of loyalty, good faith, fair dealing, and full disclosure by causing PPV to engage in the self-dealing loan guarantees. Plaintiff also alleges that the loans did not benefit PPV's shareholders. Plaintiff thus plausibly alleges that Defendants used their control over PPV to their own advantage and without including Plaintiff in the benefit of the self-dealing loans. It is a reasonable inference from Plaintiff's allegations that the self-

---

[3] The parties have not indicated when Plaintiff first became a shareholder of PPV. The parties, however, do not dispute that Plaintiff was a shareholder at all material times through September 2019.

dealing loans did not have a legitimate business purpose for PPV. Thus, the Court finds that Plaintiff has standing to maintain a direct suit against Defendants.[4]

## B. Claim Preclusion

Defendants argue that claim preclusion applies based on two different court proceedings. First, Defendants contend that Plaintiff's current claim would amount to relitigating the July 2019 state court proceeding. Second, Defendants argue that Plaintiff could have brought this claim during the December 2021 bankruptcy proceeding. Thus, Defendants argue, this Court is precluded from considering Plaintiff's claim.

### 1. Legal Framework

"[A] federal court sitting in diversity must apply the *res judicata* law of the state in which it sits . . . even where the prior action was in federal court and involved federal questions." *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201 (9th Cir. 1982); *see also Intri-Plex Techs. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 1982) ("Since this is a diversity action the law of the forum state . . . applies."). Thus, the Court applies Oregon law when evaluating both proceedings from which Defendants argue claim preclusion arises.

Claim preclusion "generally prohibits a party from relitigating the same claim or splitting a claim into multiple actions against the same opponent." *Bloomfield v. Weakland*, 339 Or. 504, 510 (2005). The Oregon Supreme Court has consistently defined claim preclusion as follows:

> [A] plaintiff who has prosecuted one action against a defendant through to a final judgment binding on the parties is barred on *res judicata* grounds from prosecuting another action against the same defendant where the claim in the second action is one which is based on the same factual transaction that was at issue in the first,

---

[4] Defendants contend that the *Noakes* test is limited to shareholders who are "squeezed out." The Court disagrees. Although the plaintiffs in *Noakes* were "squeezed out," nothing in *Noakes* suggests that courts should *only* apply the exception for minority shareholders in a close corporation to those that were "squeezed out."

>seeks a remedy additional or alternative to the one sought earlier, and is of such a nature as could have been joined in the first action.

*Id.* at 510-11 (quoting *Rennie v. Freeway Trans.*, 294 Or. 319, 323 (1982)). Thus, a party may not litigate the same claim "on any ground or theory of relief that the party could have litigated in the first instance." *Id.* at 511. "[C]ourts employ a broad definition of what could have been litigated." *Drews v. EBI Cos.*, 310 Or. 134, 141 (1990). "As a rule, a subsequent claim is barred by a prior judgment if the earlier litigation proceeded to final judgment, involved the same parties, and concerned a claim arising out of the same transaction or series of related transactions." *Lucas v. Lake Cnty.*, 253 Or. App. 39, 53 (2012) (cleaned up). The key is whether the subsequent claim "aris[es] from the same transactional nucleus of facts," giving "weight to such considerations as whether the facts are related in time, space, origin, or motivation and whether they form a convenient trial unit." *Id.* (cleaned up).

    **2.  Analysis**

The Ninth Circuit has explained that "[o]rdinarily, affirmative defenses . . . may not be raised on a motion to dismiss except when the defense raises no disputed issues of fact." *Lusnak v. Bank of Am., N.A.*, 883 F.3d 1185, 1194 n.6 (9th Cir. 2018); *see also ASARCO, LLC v. Union Pac. R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint. If, from the allegations of the complaint as well as any judicially noticeable materials, an asserted defense raises disputed issues of fact, dismissal under Rule 12(b)(6) is improper." (citations omitted)). This includes the affirmative defense of claim preclusion. *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984) (concluding that although normally affirmative defenses may not be raised in a Rule 12(b)(6) motion, the *res judicata* defense could be raised in that case because "the defense raises no disputed issues of fact"). "In

other words, dismissal based on an affirmative defense is permitted when *the complaint* establishes the defense." *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (emphasis in original). Thus, Defendants may only prevail on their motion to dismiss based on claim preclusion if Plaintiff's Complaint establishes the defense. Otherwise, this argument must await summary judgment or trial for resolution.

### a. State Court Proceeding

Defendants argue that Plaintiff's claim in this case is barred by the July 2019 state court proceeding resulting in the Purchase Order. At the time of that state court proceeding, Plaintiff did not know about Defendants' purported loan guarantees to ESG that occurred between August and October 2018.[5] The bankruptcy proceeding started several months later, in December 2019. Plaintiff filed a proof of claim sometime thereafter. Plaintiff alleges that it was not until the bankruptcy proceeding that Plaintiff discovered that Defendants had PPV and Bravo guarantee loans to ESG.

Under Oregon law, "claim preclusion cannot apply if the party asserting a second claim lacked actual or constructive knowledge of its availability when the party asserted the first claim. In that situation, the party cannot be said to have had the 'opportunity to litigate' the first claim." *Soren-Hodges v. Blazer Homes, Inc.*, 204 Or. App. 86, 94 (2006); *cf. Troutman v. Erlandson*, 287 Or. 187, 210 (1979) (dismissing subsequent action alleging fraud by one partner against another after the first action litigating the dissolution of the partnership because the facts were known during the first litigation, stating "[t]he only reason for permitting plaintiff to

---

[5] Although the state court found that Defendants engaged in oppressive conduct, that was for different conduct than the alleged wrongdoing at issue here. The state court found that Defendants "engaged in oppressive conduct by terminating dividend payments to [Plaintiff], and by demanding that [Plaintiff] execute a loan guarantee for PPV's debt to its then lender shortly after [Plaintiff] put his shares in common stock." ECF 7-1, at 2.

maintain this second case would be his asserted lack of actual and constructive knowledge of the fraud in time to give evidence of it at the trial of the first case"). "Whether the court will impute constructive knowledge to the party depends on whether the party could have discovered the availability of the second claim by conducting a reasonably diligent inquiry at the time of the first." *Soren-Hodges*, 204 Or. App. at 95.

Plaintiffs' Complaint and the documents incorporated by reference and through judicial notice do not establish that Plaintiff had actual or constructive knowledge of Plaintiff's breach of fiduciary duty claim at the time of the state court proceeding. Thus, resolving the affirmative defense of claim preclusion based on the 2019 state court litigation is inappropriate at this stage of the proceedings.

### b. Bankruptcy Proceeding

Defendants next contend that Plaintiff could have brought his breach of fiduciary duty claim during the bankruptcy proceeding. In a somewhat similar circumstance, the Ninth Circuit has explained, in the context of a claim of preclusion from an arbitration proceeding:

> By definition, res judicata bars only those grounds for recovery which could have been asserted in the prior litigation. If a claim could not have been asserted in prior litigation, no interests are served by precluding that claim in later litigation. Another way of stating the same principle is that *a claim is not barred by res judicata if the forum in which the first action was brought lacked subject matter jurisdiction to adjudicate that claim*.
>
> Here, pursuant to the terms of [Defendant's] agreement with [Plaintiff], the district court refused to compel arbitration of [Plaintiff's] federal securities claims, and, in the process, retained jurisdiction for itself. Because the arbitration panel *did not have subject matter jurisdiction over [Plaintiff's] federal claims, [Plaintiff] could not have brought those claims in the prior proceeding*. Consequently, they are not barred by res judicata.

*Clark v. Bear Stearns & Co.*, 966 F.2d 1318, 1321 (9th Cir. 1992) (citations omitted) (emphasis added).

PAGE 11 – OPINION AND ORDER

In considering whether to remand this case to state court, the Bankruptcy Court concluded that it did not have subject matter jurisdiction to adjudicate Plaintiff's breach of fiduciary duty claim. The Bankruptcy Court rejected the bases under 28 U.S.C. § 1334(b) for its jurisdiction over Plaintiff's breach of fiduciary duty claim. *In re Agua Holdings, Inc.*, 2023 WL 2333252, at *2-5 (Bankr. D. Or. Mar. 2, 2023). In that analysis, the Bankruptcy Court determined that Plaintiff's breach of fiduciary duty claim did not "arise under" or "arise in" bankruptcy jurisdiction. *Id.* at *2-3. The Bankruptcy Court then considered whether it had "related to" jurisdiction, using the post-confirmation test and analyzing whether "the outcome of Burns's claim will affect the implementation of the plan or the plan will have an effect on the outcome of Burns's claim," and the Bankruptcy Court concluded that "[t]he answer to both questions is no." *Id.* at *3-4. The Bankruptcy Court held that remand to the state court was appropriate, unless this Court determined that Defendants' Notice of Removal was sufficient to confer jurisdiction to this Court.

In considering Defendants' argument that this Court should apply claim preclusion to the bankruptcy proceedings, the Court requested that the parties file supplemental briefs to discuss whether this Court should apply issue preclusion to the Bankruptcy Court's conclusion that it did not have subject matter jurisdiction. Two factors counsel against applying issue preclusion, although neither party addressed either factor. First, there is uncertainty in the law regarding the preclusive effect of an unappealable decision such as a remand order. *See Hohu v. Hatch*, 940 F. Supp. 2d 1161, 1170-73 (N.D. Cal. 2013) (discussing cases, although concluding that until the Ninth Circuit directly addresses the question the court would apply preclusion to the unappealable remand order). Second, there are different standards for pre-confirmation and post-confirmation "related to" bankruptcy jurisdiction, raising a question about whether the issues are

the same and the issue of whether Plaintiff could have brought his claim under the "pre-confirmation" test was actually litigated by the Bankruptcy Court in its jurisdictional decision. *See In re Agua Holdings, Inc.*, 2023 WL 2333252, at *3 (identifying the two different tests before and after confirmation). The Court thus declines to apply issue preclusion to the Bankruptcy Court's jurisdictional determination in its remand decision. *See Steen v. John Hancock Mut. Life Ins. Co.*, 106 F.3d 904, 912 (9th Cir. 1997) ("Collateral estoppel is inappropriate if there is any doubt as to whether an issue was actually litigated in a prior proceeding").

Although the Court declines to apply issue preclusion to the Bankruptcy Court's jurisdictional decision, that does not lessen Defendants' burden to show claim preclusion, and claim preclusion cannot apply if the Bankruptcy Court did not have subject matter jurisdiction over Plaintiff's breach of fiduciary duty claim. Defendants do not explain how the Complaint and the incorporated and judicially noticed documents show the Bankruptcy Court's "related to" jurisdiction.[6] Defendants offer no argument that the Bankruptcy Court would have had jurisdiction under the pre-confirmation "related to" test. Defendants simply state that if Plaintiff wanted to pursue his claim, the time to do so was before the Bankruptcy Plan was confirmed. Such a conclusory assertion, however, is insufficient at this stage of the litigation. *See, e.g.*, *In re Nicholas*, 556 B.R. 465, 474 (Bankr. D. Idaho 2016) ("Defendants have not shown, nor is it apparent from the Amended Complaint, nor does the docket for Maywood chapter 7 case suggest, that the California bankruptcy court issued any final judgments or orders concerning any of the issues raised in Plaintiffs' complaint. Absent orders of the bankruptcy court concerning the

---

[6] This basis of jurisdiction under 28 U.S.C. § 1334(b) is the most broad and the only one with a different pre- and post- confirmation test, and thus the only basis the Court considers.

matters referred to by Defendants, the mere pendency and administration of the prior bankruptcy case is insufficient to support the application of claim preclusion or res judicata." (footnote omitted)).

Nor do Defendants argue how Plaintiff's allegations support "related to" jurisdiction—Plaintiff alleges a breach of fiduciary duty claim against non-debtors James and Joe Thuney, not a claim against PPV. This is similar to a preclusion jurisdictional issue resolved by the United States Bankruptcy Appellate Panel (BAP) for the Ninth Circuit in *In re Birting Fisheries, Inc.*, 300 B.R. 489 (B.A.P. 9th Cir. 2003). The BAP considered, among other issues, whether a Norwegian judgment based on claims of fraud and breach of fiduciary duty by an individual shareholder who was an equal partner in an entity that was the majority shareholder of a corporate debtor were "related to" the bankruptcy of the corporation for preclusion purposes. *Id.* at 504-05 (applying the pre-confirmation "related to" test). The BAP explained that the confirmation plan did not include "a discharge of, or injunction against, [the individual's] personal liability as a shareholder." *Id.* at 504. The BAP concluded that "the Norwegian Judgment had no impact on [the company's] ability to reorganize, as it was only a judgment against nondebtor [individual]. . . . Since the Plan and the Norwegian action were not the 'same cause of action,' the Plan did not preclude enforcement of the Norwegian Judgment on *res judicata* grounds." *Id.* at 505. Plaintiff's allegations and the documents here show the same.

Defendants also fail to show that Plaintiff's Complaint and documents incorporated therein establish that Plaintiff's breach of fiduciary duty claim arises "from the same transactional nucleus of facts" to support the first element of claim preclusion. *See Lucas*, 253 Or. App. at 53. The transactional nucleus of facts in the bankruptcy proceeding involved PPV's restructuring under Chapter 11 and PPV's payment of the money it owed to Plaintiff for PPV's

repurchase of Plaintiff's shares as required under the Purchase Order. That transaction is factually distinct from the alleged breach of fiduciary duties from the alleged self-dealing Defendants engaged in by having PPV guarantee loans to Defendants' other company, ESG, and any harm that conduct might have caused Plaintiff. *See In re Birting*, 300 B.R. at 504-05; *see generally Helton v. Phillips*, 155 Or. App. 217, 224 (1998) (discussing claims that are not based on the same factual transactions).

The proof of claim Plaintiff filed in the bankruptcy proceeding was predicated on PPV's failure, or inability, to pay Plaintiff the remaining amount agreed to under the 2019 Purchase Order. The Bankruptcy Plan established the $1.9 million payment to Plaintiff for "unpaid dividends on Burns' prepetition interest in preferred stock in PPV, the purchase price for Burns' prepetition interest in preferred stock in PPV, and the purchase price for Burns' prepetition interest in common stock in PPV." *In re PPV, Inc.*, Order Confirming Debtors' Third Amended Joint Plan of Reorganization (Or. Bankr. April 1, 2021) (Case No. 19-34517-dwh11, ECF 515 at 15). The Plan acknowledged the Settlement Agreement between the parties, PPV, and Bravo to explain the reduction in Plaintiff's claim, the tolling of the statute of limitations, and the releases that would be executed upon final payment, *id.* at 22-23, but did not incorporate any element relating to Plaintiff's individual claim against Defendants. The claim before this Court, however, is predicated on Defendants' alleged violation of fiduciary duties that occurred between August and October 2018. Defendant is conflating how Plaintiff calculated his damages (amount remaining after he received a payment from the bankruptcy proceedings) with the basis of Plaintiff's breach of fiduciary duty claim.

For all of these reasons, the Court concludes that resolving Defendants' affirmative defense of claim preclusion is inappropriate at this stage of the proceedings. Claim preclusion is

not established on the face of Plaintiff's Complaint and judicially noticed documents and involves disputed issues of fact.

## C. Failure to State a Claim

Defendants also move to dismiss Plaintiff's breach of fiduciary duty claim for failure to state a claim under Rule 12(b)(6). Defendants argue that Plaintiff cannot bring his claim as a matter of law because his right to bring claims as a minority shareholder terminated under ORS § 60.952(5)(d) when he transferred his stock shares.

Plaintiff's status as a minority shareholder ended in September 2019, and, as previously discussed, until that time, Defendants owed Plaintiff the fiduciary duties of loyalty, good faith and fair dealing, and full disclosure. Plaintiff, however, was obligated to relinquish his stock certificate under the Purchase Order. Defendants argue that action terminated Plaintiff's shareholder rights under ORS § 60.952(5)(d).[7]

The relevant portion of ORS § 60.952(5)(d) provides: "Unless the purchase order is modified by the court, the selling shareholder shall have no further rights as a shareholder from the date the seller delivers all of the shareholder's shares to the purchaser or such other such date specified by the court." The flaw in Defendants' argument is that Defendants' purported self-dealing did not occur *after* Plaintiff turned over his stock certificates. The purported self-dealing occurred *before* Plaintiff turned over his stock certificates. *See Powell v. Rasmussen*, 2022 WL 1015331, at *1-2 (D. Or. Apr. 5, 2022) (finding that even though the alleged wrongdoing against a former shareholder occurred before an ORS § 60.952 hearing and was beyond the scope of that

---

[7] The purpose of ORS § 60.952 is to "authorize[] the Court to provide any remedy [to close corporations] that it sees fit if the parties cannot agree on how to manage the corporation moving forward." *Motameni v. Adams*, 2023 WL 4744736, at *9 (D. Or. July 24, 2023).

hearing, the plaintiff "may maintain an action against [defendant] to the extent [plaintiff] suffered damage directly").[8]

Defendants' argument would effectively immunize any wrongdoing by a majority shareholder whenever the wronged minority shareholder did not learn of the wrongdoing until after the ORS § 60.952 hearing. Further, under the Purchase Order, Plaintiff had ongoing rights after he turned over his stock shares—he had the right to additional payments from PPV, he had the right to be paid before PPV could redeem any other stock, issue new stock, or transfer stock between any other shareholders, he had the authority to provide written consent before PPV could make any loans or incur any new debt until he was paid in full, he had the right to be paid in full before PPV could raise any employee or consultant's salary or bonus more than 5%, and he had the authority to approve or reject any sale of PPV. Thus, he had status greater than a mere creditor.

Additionally, as indicated in *Noakes*, former minority shareholders can bring direct suits against majority shareholders for a breach of fiduciary duty. *See* 116 Or. App. at 471. Nothing in the statute suggests that just because a shareholder has elected an ORS § 60.952 hearing, the minority shareholders rights are forfeited and such shareholders can no longer bring claims against majority shareholders' unknown conduct. Further, Defendants elected to undergo a share valuation through the ORS § 60.952 mechanism and appear to have failed to disclose the underlying loans during the valuation process. If minority shareholder rights were forfeited in the absolute, then majority shareholders could elect for the statutory hearing process, conceal their

---

[8] The plaintiff in *Powell* knew of the alleged wrongdoing at the time of the ORS § 60.952 hearing and attempted to assert a tort claim against the defendants. In this case, Plaintiff did not know of the alleged wrongdoing at the time of the ORS § 60.952 hearing because Defendants did not disclose information about the loan guarantee to ESG during this proceeding.

misconduct, and immunize themselves from future liability after their misconduct become known.

For all these reasons, the Court rejects Defendants' arguments that ORS § 60.952 bars Plaintiff's breach of fiduciary duty claim. The Court therefore denies Defendants' motion to dismiss Plaintiff's breach of fiduciary duty claim for failure to state a claim.

## CONCLUSION

The Court DENIES Defendants' Amended Motion to Dismiss (ECF 7) and Second Motion to Dismiss (ECF 9).

**IT IS SO ORDERED**.

DATED this 21st day of November, 2023.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge